State *v*. Pratt.

## State v. Samuel G. Pratt.

*Liquor Law. Habitual Drunkard. When Private House becomes a Place of Public Resort.*

When a witness testified that H. used liquor to excess at some particular times, and that he had seen him the worse for liquor some number of times, and another witness said H. is a dissipated man ; *Held*, that this evidence has a legal tendency to show that H. is an habitual drunkard, in the sense in which these words are used in section 1, page 19, Acts of 1853. But its sufficiency, in amount, is wholly a question for the jury.

An habitual drunkard is one who is in the habit of getting drunk, or one who commonly or frequently is drunk ; not that he is constantly or universally drunk.

Evidence that for a considerable period of time a very large number of persons had been in the habit of going to the defendant's house, many more than went to the houses of other persons in the same neighborhood, and many more than any business in which he was openly and honestly engaged furnished any occasion for ; that many of these persons came from other towns, called at unusual hours, and under suspicious circumstances, is competent to be left to the jury to prove that the defendant's house had become a place of public resort ; and if the defendant would avoid the effect of the presumption raised by such evidence, he must show some other reason for it, that being peculiarly within his knowledge.

Prosecution for violation of the act of 1852. to prevent traffic in intoxicating liquors for the purpose of drinking, which was brought into the county court by appeal. Plea not guilty, and trial by jury at the December term, 1860. The jury returned a verdict of guilty of three offences.

The facts in the case, and all questions arising on the trial, sufficiently appear in the opinion of the court.

*Washburn & Marsh*, for the respondent.

*Converse & French*, for the prosecution.

Poland Ch. J. The respondent was tried in the county court upon a general complaint for violations of the liquor law, under which, by the statute, the jury may return a verdict for so many offences as are established by the evidence, and was convicted of three offences ; one for furnishing liquor to Ordway, and two for liquor furnished at his house to Davis and Hadley, and drank by them there.

No question is now made but that the conviction was proper for the furnishing the liquor to Ordway.  It appears from the exceptions that there was no direct evidence that the liquor furnished by the defendant to Davis and Hadley, and drank at his house, was purchased or paid for, and the prosecutor only claimed that the defendant was liable as for giving it to them.  This having been done at the defendant's house did not make him liable to the penalty, unless it came within the provisions of the first section of the act of 1853, which provides in substance, " that a person shall not be liable for giving away intoxicating liquors at his own house, unless given to an habitual drunkard, or unless such dwelling shall become a place of public resort. The prosecutor claimed that the defendant was liable for the liquor given to Hadley, because he was an habitual drunkard, and for that given to Davis, because his house had become a place of public resort.  No question is now made but that the court correctly defined to the jury what would constitute a man an habitual drunkard, or make a private dwelling a place of public resort ; but the defendant insisted that there was no legal testimony introduced by the prosecution legally tending to establish either of those propositions, and that therefore the court should have directed an acquittal for those alleged offences ; and that it was error to submit the case to the jury at all as to those charges.  This requires us to look into the testimony, and to enable us to see just what the evidence was.  The minutes of the presiding judge are attached to the exceptions.  The only testimony as to Hadley being an habitual drunkard came from Davis and Dr. Richmond. Davis said :  " Hadley used liquor to excess at some particular times ; have seen him worse for liquor some number of times." Dr. Richmond said :  " Hadley is a dissipated man."

The fair definition of *habitual drunkard*, as used in the statute, we suppose to be,  " one who is in the habit of getting drunk, or one who commonly or frequently is drunk," and we do not suppose it necessary to satisfy those terms that a man should be constantly or universally drunk.  The common term or phrase, *uses liquor to excess*, when applied to a person, is ordinarily understood to mean the same as saying that he gets intoxicated or drunk ; and saying that such a person did so at particular times

would generally be understood as meaning that these times occur about as often as he found an opportunity to do so. So the common understanding of the statement, that a man is a dissipated man, is, that he uses intoxicating drinks frequently and excessively ; in plainer terms, that he is often intoxicated.

The language of these witnesses by the strict rules of lexicography might not necessarily mean quite so much as this, but the jury would have the right to understand the language in its common and popular sense, because they might well presume the witnesses used it in that sense, and they would also have the right to draw all fair and reasonable inferences from the facts stated by the witnesses.

We think this evidence did legally tend to show that Hadley was an habitual drunkard ; its sufficiency in amount was wholly a question for the jury.

In relation to the evidence as to the defendant's house having become a place of public resort, the evidence of several of the defendant's neighbors, who had proper means of observation, proved that for a considerable period of time, a very large number of persons had been in the habit of going to Pratt's house, many more than went to the houses of other persons in the same neighborhood, and many more than any business in which he was openly and honestly engaged furnished any occasion for ; that many of these persons came from other towns, and many called there at unusual hours, and under suspicious circumstances.

We think the evidence makes just the case the statute intended, and raises a fair presumption that the true reason why the defendant was so favored with customers or visitors was because his house contained peculiar inducements and attractions, at least until the defendant should show some other reason for it, that being peculiarly within his knowledge.

If any error was committed in submitting the question to the jury as to Hadley's being a common drunkard, we do not see that there would be any necessity of reversing the conviction as to that offence, because the jury having found that the defendant's house had become a place of public resort, that would make him equally liable on that ground for giving to Hadley, as well as to Davis.

The exception taken as to the admission of the evidence of Gay and Hadley having liquor in their possession after having been to the defendant's house, is out of the case, as the defendant was acquitted by the jury on that charge. The respondent's exceptions must be overruled.