## KELLY *v.* STATE.

[74 South. 679, Division A.]

1. CRIMINAL LAW. *Homicide. Bill of exceptions. Argument of counsel.*

On appeal in the supreme court, the special bill of exceptions certified by the judge will be taken as stating the facts and not testimony taken on the hearing of a motion for a new trial.

2. CRIMINAL LAW. *Argument of counsel.*

Where on a trial for murder the district attorney characterized accused as a bad negro although the evidence did not support such charge and further stated that he never prosecuted innocent persons and he had investigated this case, such remarks constituted reversible error, where the court sustained defendant's objection to the remarks, but did nothing more.

APPEAL from the circuit court of Coahoma county.

HON. W. A. ALCORN, JR., Judge.

Horace Kelly was convicted of murder and appeals.

The facts are fully stated in the opinion of the court.

*John J. Adams,* for appellant.

The district attorney in his closing argument in this case before the jury, made use of the following unwarranted and prejudicial remarks, as shown by appellant's motion for new trial and signed by the court as follows, to wit: "I want this negro, gentlemen, I want him. You may as well tear down this courthouse if you don't convict this negro. I want you to give me this negro."

"I want you to convict this negro; if you don't convict him I wont be able to convict anybody. God knows I am in earnest and mean what I say." "You must give me this negro; I must have him; I never will feel like prosecuting another, if you don't and I want you to go and give me this negro."

"I want you to go out and convict that fellow; if you don't convict him you had just as well tear down the courthouse and turn every other son of a gun aloose."

"I don't know whether he is guilty or not, I believe it so strong, that I would not mind being sheriff when he is hung."

"This is a mean negro; a bad negro; it is up to you, gentlemen; you can turn this negro aloose, and dam up the Sunflower river with dead negroes, and back the water up to Clarksdale."

"I never prosecute an innocent man. I always investigate the cases throughly, as I have done in this case, and while the law does not allow me to talk to defendants in this court, I did get a statement of this case from Rosa Hill, who was charged with the murder of Martha Ann Kimmons in presence of her attorneys, and found that she was not guilty, and *nolle-prossed* her case and the case of Lucile Hill."

We submit that there is not a scintilla of proof in this
record to warrant statements as here made; they are un-
warranted and in violation of the rules governing the
trials of criminal cases and of such character well cal-
culated to influence the minds, excite the passions and
arouse the prejudice of the jurors and while in that in-
flamed condition cause them to render a verdict against
appellant, not supported by the proof in the case, abso-
lutely depriving appellant of that fair and impartial trial
guaranteed by the law to him. This court has repeated-
ly said that matters *dehors* the record and prejudicial
statements made by the district attorney in his closing
argument before the jury was reversible error; the re-
marks here made by the district attorney were highly
inflammatory and prejudicial to appellant. Constitution,
sec. 26; *Hampton* v. *State,* 50 So. 545; *Sykes* v. *State,*
42 So. 875; *Harris* v. *State,* 50 So. 626; *Hardaway* v.
*State,* 54 So. 833; *Martin* v. *State,* 63 Miss. 505.

The law accords to every defendant a speedy, fair and
impartial trial and it is the duty of the courts to see that
they are tried according to the law and the evidence,
free from any appeal of passion, prejudice, or other im-
proper conduct or motive and it is fully emphasized
when a negro is placed on trial before a jury of twelve
white men, every defendant, white or black, should be
accorded such a trial. *Hampton* v. *State,* 40 So. 545;
*Sykes* v. *State,* 42 So. 875; *Hardaway* v. *State,* 54 So.
833; *Mosely* v. *State,* 73 So. 793.

*Frank Robenson,* for appellant.

Exception was taken to certain remarks of the district
attorney as shown by the special bill of exceptions. I
think the action of the court in sustaining the objections
to these remarks cured any error in the use of such lan-
guage. However, I do not think these remarks are of
such a character as to constitute reversible error and do
not come within the cases cited by counsel for appellant.

Taking a portion of any speech and setting it off by it-self, it is very difficult to realize accurately the force of the remarks since the court does not have the benefit of the other parts of the speech nor any remarks that may have been made by counsel for appellant. I submit that these statements, though they may be the results of the zeal of the district attorney, are not objectionable to the extent of causing a reversal. Even when taken in the abstract, they do not rise to the character of being inflammatory or calculated to arouse the passions of the jury on the ground of race prejudice or otherwise.

SYKES, J., delivered the opinion of the court.

The defendant, Horace Kelly, a negro. in the circuit court of Coahoma county, was tried and convicted of the murder of one Martha Ann Kimmons, a negro woman, and sentenced to be hanged, from which judgment this appeal is prosecuted.

The testimony upon which the defendant was convicted was principally that of a negro woman, Rosa Dearing, who claimed to have witnessed the tragedy. Rosa was also indicted for this offense, but the indictment was *nolle pros'd* against her. The other material testimony against the defendant was that of a negro man by the name of Cato, a paramour of the woman killed, who testified to a rather strange confession made to him by the accused. The defense was an alibi proved principally by the members of the family of the accused. After a careful consideration of the record we have concluded that we would not disturb the finding of the jury alone upon the testimony.

In the closing argument of the case the district attorney used the following language, as is shown by the special bill of exceptions:

"I want this negro, gentlemen, I want him. You may as well tear down this courthouse if you don't convict this negro. I want you to give me this negro."

"I want you to convict this negro; if you don't convict him I won't be able to convict anybody. God knows I am in earnest and mean what I say."

"You must give me this negro; I must have him; I never will feel like prosecuting another if you don't, and I want you to go and give me this negro."

"I want you to go out and convict that fellow; if you don't convict him you had just as well tear down the courthouse and turn every other son of a gun aloose."

"I don't know whether he is guilty or not, I believe it so strong that I would not mind being sheriff when he is hung."

"This is a mean negro; a bad negro; it is up to you, gentlemen; you can turn this negro aloose, and dam up the Sunflower river with dead negroes, and back the water up to Clarksdale."

"I never prosecuted an innocent man. I always investigate the cases thoroughly, as I have done in this case, and while the law does not allow me to talk to defendants in this court, I did get a statement of this case from Rose Hill, who was charged with the murder of Martha Ann Kimmons, in presence of her attorneys, and found that she was not guilty, and *nolle pros'd* her case and the case of Lucile Hill."

On motion for a new trial in this case, the district attorney testified that he did not make all of the statements hereinabove quoted. The special bill of exceptions, however, signed by the judge, certifies that he did, and we are governed by the facts as set out in this bill of exceptions, and not by the testimony introduced on the hearing of the motion for a new trial.

To each of the above statements the attorneys for the defendant objected, and the objection was sustained by the court. However, the court did not instruct the jury that they must disregard this portion of the argument of the district attorney, neither did it stop the district attorney from making this character of argument. So far as being harmful to the defendant, the objection

might as well have been overruled. While great latitude is allowed in the argument of counsel, at the same time these arguments must be based upon the testimony introduced in the case. The portion of the above-quoted argument was highly prejudicial to the accused. All of it was improper. It was not an argument to convict the defendant upon the testimony, but rather an appeal to the prejudice of the jury to convict him on general principles. There was no testimony whatever introduced to show that the accused was a man with a bad reputation for peace and violence, yet the district attorney in this argument characterizes him as "a mean negro; a bad negro." In the case of *Martin* v. *State,* in 63 Miss. on page 507, 56 Am. Rep. 813, the court, in condemning a similar argument, says:

"This was an assumption or declaration of facts as to the character of the prisoner made by counsel without being sworn or examined as a witness, and of a nature well calculated to influence the jury against the prisoner. The general character of the prisoner had not been put in issue. If evidence had been offered by the prosecution to prove that his character was such as that attributed to him by counsel, it would, upon the plainest principles of law, have been rejected as incompetent. The prisoner was on trial for a specific offense, and it was his right under the law to be tried for that offense, upon competent evidence confined to that issue. We are of opinion that the counsel for the prosecution, in the matter above quoted, passed the bonds of legitimate advocacy, and that, under the circumstances of the case. the prisoner may have been, and probably was, thereby injured. Such declarations uttered by distinguished counsel, of high moral and social standing, in any case, would inevitably tend to prejudice the jury against the prisoner."

The last paragraph of the above-quoted argument of the district attorney was perhaps the most prejudicial and improper part. By it he told the jury that he never

prosecuted an innocent party, that he always investigated the cases thoroughly, as he had done in this case, and that he had gotten a statement from Rose Hill or Rosa Dearing, who was also charged with the murder, and had found that she was not guilty of it.

It was the theory of the defense in this case that this woman, Rose Hill, or Rosa Dearing, was the guilty party. She had been under an indictment also for the same offense. There was no testimony showing the facts about the private investigation made by the district attorney in this case and of his conference with Rosa Dearing and the facts and reasons why he *nolle pros'd* the case against her and Lucile Hill. The state would not have been permitted to introduce this testimony had it tried. Consequently the argument of the district attorney amounted in effect to his unsworn testimony, which was incompetent. It further had the effect of giving the jury the benefit of his private opinion as to the guilt of the accused, not based upon the testimony introduced before the jury, but based upon his opinion resulting from his private investigation of the case. In other words, the district attorney threw the weight of his personality and his private opinion into the scales, and asked the jury to convict this negro at least in part because he was satisfied of his guilt from his private investigation. The jury might well have reasoned that under the testimony they had some doubt as to whether the accused or Rosa Dearing killed the deceased, but since the district attorney had assured them that from his private investigation the accused was guilty, then they would be safe in accepting this assurance. Quoting again from the *Martin Case, supra*:

"Within the limits of the testimony the argument of counsel is and should be free, but that freedom does not extend either to the statement or the assumption of facts, or to commenting upon facts not in evidence, to the prejudice of the adverse party. . . . Being counsel and witness in the same cause is not prohibited by law if

counsel chooses to testify, but such a union of offices is permissible and tolerable only where counsel is sworn and examined like other witnesses.''

This court fully recognizes that in the enthusiasm of the moment, counsel, who have an abiding faith in the guilt of the accused, are often swept from the legitimate bounds of argument by this enthusiasm on the spur of the moment. It is well, however, to remember, as is said by Justice CALHOON in the case of *Hampton* v. *State,* 88 Miss. 257, 40 So. 545, 117 Am. St. Rep. 740, that:

''Trials are to vindicate innocence or ascertain guilt, and are not to be vehicles for denunciation.''

Because of the above argument we are of the opinion that the defendant has not had that fair and impartial trial to which every one is entitled under the law of this state, regardless of his race or station in life.

*Reversed and remanded.*